UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADAM KOKESH** | **CIVIL ACTION** |
| **VERSUS** | **NO.** |
| **KEVIN CURLEE, KEVIN REEVES, in his official capacity as Superintendent of the Louisiana State Police, and LEON CANNIZZARO, JR., in his official capacity as Orleans Parish District Attorney** | |

## **COMPLAINT**

NOW COMES Complainant, Adam Kokesh, a person of the full age of majority residing in the State of Arizona, who respectfully represents as follows:

1.

Made Defendants herein are the following:

A. **KEVIN CURLEE,** a person of the full age of majority who was at all times material hereto acting under color of law as a Sergeant in the Louisiana State Police.

B. **KEVIN REEVES**, **in his Official Capacity as the Superintendent of the Louisiana State Police,** a person of the full age of majority who was at all times material hereto responsible for the Louisiana State Police's enforcement of Louisiana law.

C. **LEON CANNIZZARO, JR., in his Official Capacity as Orleans Parish District Attorney,** a person of the full age of majority who was at all times material hereto responsible for prosecuting persons alleged to have violated Louisiana law

1

in Orleans Parish, State of Louisiana.

2.

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C §§ 1331, 1332, 1367, and 2201, inasmuch as this matter concerns citizens of diverse states and arises in part under 42 U.S.C. §1983, *et seq.*, the United States Constitution, including the First, Fourth, Fifth, and Fourteenth Amendments, and Louisiana state law, including claims under Louisiana Constitution Article I, §§ 2, 5, 7, 9, and 13, and Louisiana Civil Code Articles 2315, 2316, and other applicable law.

3.

Venue is proper in this Honorable Court in part pursuant to 28 U.S.C §1391 as a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Louisiana.

**Background and Factual Allegations**

4.

Adam Kokesh is a Libertarian candidate for President of the United States; a member of Iraq Veterans Against the War; and an activist in favor of the freedom of speech, the right to keep and bear arms, the right to peaceably assemble, the right to petition the government for a redress of grievances, the right to counsel, the right to remain silent, the right against self-incrimination, and all other natural rights and aspects of individual liberty, individual responsibility, and individual autonomy, that this nation was established to protect.

5.

Kokesh has travelled throughout the United States speaking, engaging in demonstrations, engaging in civil disobedience, and otherwise advocating in favor of maximum liberty and self-ownership for individuals and against the coercive power of government to control all aspects of individuals' lives.

6.

In January 2019, Kokesh was in New Orleans, Louisiana, promoting his book *FREEDOM!*, which he had delivered to all addresses in New Orleans.

7.

On January 2, 2019, Kokesh was one of two passengers in a motor vehicle operated by a third person and stopped on the shoulder of Interstate 10 in New Orleans.

8.

Louisiana State Police Sgt. Kevin Curlee stopped his vehicle behind the vehicle in which Kokesh had been riding and ordered Kokesh and the driver to get in their vehicle.

9.

Curlee then ordered the other passenger to remain outside and stand in front of Curlee's headlights.

10.

Curleee then handcuffed the other passenger and accused him of spray-painting the wall adjacent to the shoulder of the roadway.

11.

After examining the wall, Curlee acknowledged that the handcuffed passenger had not been spray-painting the wall as Curlee had initially thought but instead had used water and a stencil to clean a portion of the dirty wall, leaving behind an image of the word "FREEDOM!"

12.

After Curlee established for himself that no vandalism had taken place, the handcuffed passenger asked Curlee, "What's going to happen now?"

13.

Curlee responded that he would be letting everyone go.

14.

Curlee then retrieved his keys and began to uncuff the passenger.

15.

As Curlee did so, he noticed that Kokesh was video recording the encounter.

16.

At that point, Curlee's demeanor changed and he asked the handcuffed passenger, "You guys do this for attention? Filming cops for attention?" or words to that effect.[1]

17.

Curlee then ordered the driver to get out of the vehicle and walked to the driver's door while Kokesh remained sitting in the front passenger seat, recording the encounter.

---

1 The exact words spoken by and to Curlee throughout the encounter are believed to have been recorded on Curlee's body camera.

18.

Curlee then demanded documents from Kokesh, saying, "You got your ID on you, bro? Let me see your ID.   This is what y'all do?   You videotape the police?   Let me see your driver's license bro?"

19.

At no time did Curlee ever ask Kokesh to state his name or to otherwise state his identity.

20.

Kokesh invoked his rights to counsel and to remain silent and told Curlee that he did not consent to a search of any kind.

21.

Curlee responded, "Let me see your driver's license, sir."

22.

Curlee then walked back to his vehicle and turned on bright spotlights pointed at Kokesh's camera.

23.

Thereafter, another Louisiana State Police trooper arrived and ordered Kokesh to get out of the vehicle, unplug his camera, and walk to the back of the vehicle.

24.

Curlee asked Kokesh again, "You got your ID on you?"

25.

Curlee then told Kokesh, "In just a minute you are going to be put in handcuffs and we're going to find out who you are or you can comply and do it the right way."

26.

As Curlee began to handcuff Kokesh, Kokesh gave his camera to the driver.

27.

Curlee told the driver to turn off the camera.

28.

Curlee handcuffed Kokesh and told him that he was under arrest.

29.

At some point thereafter, Curlee had the driver obtain Kokesh's driver's license from the driver's vehicle and deliver it to Curlee.

30.

Curlee accused Kokesh of resisting an officer in violation of La. R.S. 14:108(B)(1)(c) and took him to the Harbor Police Substation. From there, Curlee and other officers transported Kokesh to jail.

31.

Curlee removed Kokesh from the Harbor Police Substation with the help of other officers by carrying Kokesh face-down, holding Kokesh by the arms and legs, while his hands remained cuffed behind his back.

32.

Before putting Kokesh in a squad car for transport to jail, Curlee and the others dropped Kokesh face-first onto the floor, causing Kokesh's head to hit the floor with great force, and causing Kokesh intense pain, facial swelling, and concussion-like symptoms including dizziness and disorientation.

33.

Curlee transported Kokesh to the Orleans Parish jail where he remained without adequate medical treatment until his release days later.

34.

On information and belief, the charges initiated by Curlee against Kokesh were rejected by the Orleans Parish District Attorney.

35.

As a result of Curlee's conduct set forth above, Kokesh sustained physical pain and suffering, mental and emotional outrage and distress, loss of enjoyment of life, and other damages as will be shown at trial, for which the law provides relief on the following non-exclusive bases:

**I.   False arrest and false imprisonment.**

36.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

37.

Curlee arrested Kokesh for resisting an officer in violation of La. R.S. 14:108(B)(1)(c).

38.

Louisiana Revised Statute 14:108 provides in pertinent part:

§108. Resisting an officer

A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting,

detaining, seizing property, or serving process is acting in his official capacity.

B.(1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:

(c) Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

39.

Curlee arrested Kokesh even though Kokesh never refused to give his name and make his identity known.

40.

Curlee arrested Kokesh despite never asking Kokesh to state his name and make his identity known.

41.

Instead, Curlee claimed that he arrested Kokesh because Kokesh failed to produce documents that Curlee demanded.

42.

Further, even when a police officer conducts a valid traffic stop, he must have independent reasonable suspicion of criminal activity in order to prolong the traffic stop. *Rodriquez v. United States*, 135 S.Ct. 1609 (2015).

43.

Curlee had no independent reasonable suspicion to prolong the traffic stop in this case beyond the point at which he told the other passenger that he was letting him, the driver, and

Kokesh go.

44.

A police officer may not lawfully order a person to identify himself absent particularized suspicion that the person has engaged in, is engaging in, or is about to engage in, criminal activity. *Brown v. Texas*, 443 U.S. 47 (1979).

45.

Curlee had no particularized suspicion that Kokesh had engaged in, was engaging in, or was about to engage in, criminal activity and thus Curlee could not lawfully order Kokesh to identify himself. Curlee had already said that he was letting them go.

46.

Curlee is liable unto Kokesh as a matter of Louisiana law for his false arrest, unlawful detention, and false imprisonment of Kokesh.

## II. Unreasonable seizure.

47.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

48.

Curlee is liable unto Kokesh for the unreasonable seizure of Kokesh without reasonable suspicion, probable cause, arguable probable cause, or any legal justification whatsoever, in violation of Kokesh's rights guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution.

49.

Curlee is further liable unto Kokesh for the unreasonable seizure of Kokesh's driver's license without reasonable suspicion, probable cause, arguable probable cause, or any legal justification whatsoever, in violation of Kokesh's rights guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution.

### III.   Kidnapping.

50.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

51.

Curlee is liable unto Kokesh for kidnapping in violation of La. R.S. 14:44.1 and 14:45 inasmuch as he forcibly seized and carried Kokesh from one place to another without his consent, while armed with a dangerous weapon, and without probable cause, arguable probable cause, or any legal justification whatsoever.

### IV.   Battery.

52.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

53.

Curlee is liable unto Kokesh for battery as a matter of Louisiana law inasmuch as he forcibly seized and handcuffed Kokesh without Kokesh's consent and without legal justification.

54.

Curlee is further liable unto Kokesh for battery as a matter of Louisiana law inasmuch as he dropped Kokesh face-first to the ground either intentionally or with deliberate or reckless

indifference to Kokesh's health and safety.

### V. Excessive and unreasonable use of force.

55.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

56.

Curlee's battery of Kokesh also constituted the excessive and unreasonable use of force against Kokesh – who was not reasonably suspected of having committed any crime and against whom the use of any force was unreasonable - in violation of the Fourth Amendment of the United States Constitution.

### VI. Malicious prosecution.

57.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

58.

Curlee initiated charges against Kokesh without probable cause and Curlee's charges were terminated in Kokesh's favor.

59.

Accordingly, Curlee is liable unto Kokesh for malicious prosecution as a matter of Louisiana law.

60.

Further, Curlee's malicious prosecution of Kokesh was accompanied by and prompted the violation of Kokesh's rights protected by the United States Constitution, including his unlawful seizure and detention.

61.

Accordingly, Curlee is liable unto Kokesh for malicious prosecution as a matter of federal law, actionable under 42 U.S.C. §1983.

### VII. First Amendment retaliation.

62.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

63.

Curlee's demands that Kokesh produce ID and a driver's license were not reasonably related in scope to any circumstances which might have justified Curlee's detention of the other passenger or the driver of the vehicle in which Kokesh was sitting.

64.

Instead, Curlee arrested and seized Kokesh in retaliation for Kokesh's use of a camera to record Curlee's public activities in a public place, despite Kokesh's right to do so protected by the First Amendment and by Article I, §§ 7 and 9, of the Louisiana Constitution.

65.

Further, Kokesh's right to video record Curlee and other police officers engaged in public activities in a public place was clearly established at the time Curlee retaliated against Kokesh for doing so. *Turner v. Lt. Driver*, 848 F.3d 678 (5th Cir. 2017).

66.

Curlee is liable unto Kokesh for retaliating against Kokesh's exercise of clearly established rights guaranteed by the Constitutions of the United States and the State of Louisiana.

### VIII. Intentional infliction of emotional distress.

67.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

68.

The conduct of Curlee was extreme and outrageous and caused Kokesh severe outrage and severe emotional distress.

69.

Curlee desired to inflict severe emotional distress on Kokesh or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

70.

Accordingly, Curlee is liable unto Kokesh for intentional infliction of emotional distress.

### IX. Declaratory relief.

71.

Kokesh re-avers and re-allege the foregoing allegations of this Complaint.

72.

Louisiana Revised Statute 14:108(B)(1)(c) is unconstitutional on its face and as applied to Kokesh in this case.

73.

Louisiana Revised Statute 14:108(B)(1)(c) makes it a crime for a person who has been lawfully arrested or detained to refuse to give both his name and to "make his identity known to the arresting or detaining officer[.]"

74.

Louisiana law does not define how a person lawfully detained is to "make his identity known" and what, if anything, that entails in addition to stating his name.

75.

There are no standards governing the exercise of the discretion granted by the statute to police officers to decide what "make his identity known" means, and thus the statute permits and encourages an arbitrary and discriminatory enforcement of the law.

76.

When a statute fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, it must be stricken for unconstitutional vagueness. *Kolender v. Lawson*, 461 U.S. 352 (1983).

77.

Louisiana Revised Statute 14:108(B)(1)(c) is void for vagueness.

78.

In some states and in some circumstances a person may be required to respond to a police officer's demand to state his name and may be arrested if he does not. *Hiibel v. Sixth Judicial Court of Nevada*, 542 U.S. 177 (2004).

79.

Louisiana is not such a state.

80.

In Louisiana, the right to remain silent, the right against self incrimination, and the right to the assistance of counsel, attach not only when a person has been arrested but when he has been

detained.

81.

Thus, Louisiana Constitution Article I, § 13 provides in part, "When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, [and] his right to the assistance of counsel[.]"

82.

Insofar as La. RS. 14:108(B)(1)(c) authorizes a police officer to compel an arrested or detained person state his name, the statute violates Article I, § 13 of the Louisiana Constitution.

83.

To the extent La. RS. 14:108(B)(1)(c) authorizes a police officer to demand – without a warrant and without probable cause - that a detained person provide documents under pain of arrest, the statute violates Article I, § 13 of the Louisiana Constitution and the Fourth Amendment of the United States Constitution.

84.

Further, stating one's name can be incriminatory. *California v. Byers*, 402 U.S. 424, 448, 460, 464 (1971).

85.

Likewise, the compelled production of documents containing factual information regarding one's identity may be incriminating.

86.

Providing any false information regarding one's identity is itself criminalized by La. R.S. 14:108(B)(1)(c).

87.

Further, the false information need not be provided with the intent to deceive, it need only be erroneous or incorrect to be criminal.

88.

Indeed, the New Orleans municipal code provides as to false identification, "No person shall misrepresent his or her name, age or residence by use of any identification card, birth certificate, or similar identification containing any false, erroneous or incorrect information[.]" Code of the City of New Orleans, Sec. 54-487(a).

89.

Inasmuch as La. RS. 14:108(B)(1)(c) authorizes a police officer to demand – without a warrant and without probable cause - that a detained person state his name and provide identifying documents under pain of arrest, the statute violates Article I, § 13 of the Louisiana Constitution and the Fifth Amendment of the United States Constitution.

90.

This Honorable Court should therefore declare La. RS. 14:108(B)(1)(c) to be an unconstitutional violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and of the Louisiana Constitution, Article I, §§ 2 and 13.

### X.  Injunctive relief.

91.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

92.

Kokesh intends to continue his activism in Louisiana, intends to continue to rely upon and invoke his rights guaranteed by the state and federal constitutions, and therefore intends to continue to violate the unconstitutional strictures of La. R.S. 14:108(B)(1)(c).

93.

Accordingly, Kokesh faces the real, imminent, and certainly impending possibility of prosecution for violations of La. R.S. 14:108(B)(1)(c).

94.

Further, Kokesh still faces the real possibility of prosecution for the violation of La. R.S. 14:108(B)(1)(c) alleged by Curlee in that Louisiana law allows District Attorney Cannizzaro to institute a prosecution against Kokesh up to two years after the alleged offense.  La. Code Crim. Pro. Art. 572(A)(3).

95.

Because La. RS. 14:108(B)(1)(c) is unconstitutional, this Honorable Court should enjoin Defendants Curlee, Reeves, and Cannizzaro, from any future enforcement of the statute, either against Kokesh or others.

### XI.  Punitive Damages

96.

Kokesh re-avers and re-alleges the foregoing allegations of this Complaint.

97.

All reasonable public officials are deemed to know the well-settled law they enforce and the constitutionally-protected rights they have sworn to uphold.

98.

The above-described conduct of Curlee was extreme and outrageous, and done either maliciously or with reckless indifference to Kokesh's rights.

99.

Curlee is liable unto Kokesh for punitive and/or exemplary damages as a matter of federal law.

**Jury Demand**

100.

Kokesh demands a trial by jury for all claims and issues so triable.

**Prayer for Relief**

**WHEREFORE,** Complainant, Adam Kokesh, prays that this Complaint be deemed good and sufficient and that after due proceedings are had, judgment be rendered on behalf of Kokesh and against Defendants, Kevin Curlee, Kevin Reeves in his official capacity as Superintendent of the Louisiana State Police, and Leon Cannizzaro, Jr., in his official capacity as Orleans Parish District Attorney, for the following damages:

  A.  Past and future mental and emotional distress and outrage;

  B.  Past and future, loss of enjoyment of life;

  C.  Past and future physical pain, suffering, and disability;

  D.  All costs, expenses, and attorney's fees associated with the false arrest and

malicious prosecution;

E. Attorney's fees and costs associated with this lawsuit;

F. Punitive damages;

G. Exemplary damages;

H. Interest on all damages, costs, attorney's fees, and other elements of recovery to the fullest extent allowed by laws of Louisiana and the United States.

Kokesh additionally prays for a declaration that La. R.S. 14:108(B)(1)(c) is unconstitutional and for an injunction against its further enforcement by Defendants. Kokesh further prays for all other damages and legal and equitable relief to which he may be entitled.

Respectfully submitted:

/s/ Kearney S. Loughlin
KEARNEY S. LOUGHLIN
La. State Bar No. 26391
205 Rivergate Drive
Lafayette, Louisiana 70508
Telephone: (337) 534-8803
Facsimile: (337) 628-2161
**Attorney for Complainant,
Adam Kokesh**