## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| ADAM KOKESH | Civil Action No. 19-01372 |
| | Section S |
| Plaintiff, | Judge Mary Ann Vial Lemmon, |
| | Magistrate (4) Karen Wells Roby . |
| KEVIN CURLEE ET AL… Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR NO JURISDICTION (RULE 12(B)(1) AND FAILURE TO STATE A CLAIM/NO CAUSE OF ACTION RULE 12(B)(6)**

LEON CANNIZZARO,JR. in his official capacity as Orleans Parish District Attorney, ("OPDA"or "OPDA Office") submits this Memorandum in Support of its Exceptions of No Jurisdiction and Failure to State a Claim.

### SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff, Adam Kokesh ("Kokesk") alleges that he was stopped by Louisiana State Trooper Kevin Reeves and was arrested for failure to identify himself in violation of La. R.S.14:108(B)(1)(c) after a traffic stop.

1

Kokesh does not allege that OPDA did anything other than "rejected" any charges against Kokesh (Complaint, Doc. 1 para. 34. )

Kokech alleges La. R.S.14:108(B)(1)(c) is unconstitutional and seeks to enjoin OPDA "from any future enforcement of the statute, either against Kokesh or any other person. (Complaint, Doc. 1 para. 95. )

Kokesh claims that the constitutionality of La. R.S.14:108(B)(1)(c) has never been addressed in the State of Louisiana. However, that issue has clearly been addressed. A police officer may, in appropriate circumstances and, in an appropriate manner, approach a person for purposes of investigating possible criminal behavior, even absent probable cause to make an arrest. An individual in a public place may be stopped and questioned by police as to his name, address, and an explanation of his actions, *State ex rel. S.O.*, 49 So. 3d 1(la. 4th Cir. 9/3/10).

## LAW AND ANALYSIS

**(1) 11th Amendment of the United States Constitution Precludes the Suit against The Orleans Parish District Attorney in his Official Capacity**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction.  A district court may dismiss an action for lack of

2

subject matter jurisdiction by reference to any one of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *see also Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997) (citations omitted). In this case OPDA Office raises a "facial attack" on the complaint. Accordingly, the Court must examine whether plaintiff has sufficiently alleged a basis for subject matter jurisdiction, taking all of his allegations in the complaint as true. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510 (5th Cir. 1980)

The court properly grants a motion to dismiss for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). When, as is the case here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should dismiss under the former without reaching the question of failure to state a claim. *See Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). The court's dismissal of a case for lack of subject matter jurisdiction is not a

decision on the merits and does not prevent the plaintiff from pursuing the claim in a court that has proper jurisdiction. *See id.* If this Court finds that plaintiff's claims must be dismissed under Rule 12(b)(1), it does not need address the legal standard for dismissal under Rule 12(b)(6).

Under the Eleventh Amendment "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend  XI. The Eleventh  Amendment precludes  actions  brought against a state in federal court by its own citizens or citizens of another state, absent  consent,  waiver,  or  abrogation  of  the  state's  sovereign immunity. *See* U.S. Const. amend XI; *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L. Ed. 842 (1890). The Eleventh  Amendment also prohibits  suits  against  state  officials  when  the  state  is  the  real  party  in interest. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984).

*Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), solidified the doctrine that state officers could be sued in federal court despite the Eleventh Amendment, while simultaneously emphasizing the

requirements that the officers have "some connection with the enforcement of the act" in question or be "specially charged with the duty to enforce the statute" **and be threatening  to exercise that duty.** Id. at 157, 158. See Okpalobi v. Foster, 244 F.3d 405(U.S. 5th Cir. 3/12/10) (**Emphasis added**).

In this case, as Kokesh admits in his Complaint, the NOPDA Office did not enforce any statute against Kokesh and has never made any threats to do so. Accordingly, under the Eleventh Amendment "the judicial power of the United States shall not be construed to extend to this suit against OPDA Office.

**(2)Failure to State a Claim/No Case or Controversy as to the OPDA Office Exists**

As setforth in *Orix Credut All., Inc. v. Wolfe*,212 F. 3d 891,895(5th Cir. 2000) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). In determining whether a case is ripe, there are two key considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id. (*quoting New Orleans Pub. Serv., 833 F.2d at 586). A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. *See* 28 U.S.C. § 2201(a) ("In a case of *actual controversy* within its jurisdiction . . . any court

of the United States . . . may declare the right and other legal relations of any interested party seeking such declaration.") (emphasis added); *Texas v. West Publ'g. Co.*, 882 F.2d 171, 175 (5th Cir. 1989). As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)

The Delaratory Judgment Act does provide that in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other  legal relations of any interested party seeking such declaration.  In addressing the Act's restriction to cases of actual controversy the Supreme Court has stated:

> The Constitution limits the exercise of the judicial power to "cases" and "controversies.
>
>  The Declaratory Judgment Act of 1934, in its limitation to "cases of actual controversy", manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. The word "actual" is one of emphasis rather than of definition . . .
>
> A "controversy" in this sense must be one that is appropriate for judicial    determination.   A   justiciable controversy  is   thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the

legal relations of parties having adverse legal interests. It must be a real and substantial controversary admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41, 57 S. Ct. 461, 463-64, 81 L. Ed. 617 (1937) (citations omitted); *see also* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2757 (1983).

While recognizing the difficulty of fashioning a precise test for identifying a justiciable controversary, the Supreme Court has clearly instructed that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941).

Guided by these teachings, the Fifth Circuit has applied the following rule when determining whether a request for declaratory judgment relief presents an actual controversy.  A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop. *.Brown &Root Inc., v. Big Rock Corp.*, 383F.2d 662(5th Cir. 1967)"

Where the Declaratory Judgments Act is invoked the same jurisdictional requirements as to a case or controversy must be met as in other suits. *Altvater v. Freeman*, 319 U.S. 359, 63 S. Ct. 1115, 87 L. Ed. 1450. A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop. Pertinent here is this statement of the Supreme Court:

> "The Declaratory Judgment Act must be deemed to fall within this ambit of congressional power, so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends.
>
> "A 'controversy' in this sense must be one that is appropriate for judicial determination.
>
> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-241, 57 S. Ct. 461, 464, 81 L. Ed. 617, 621. See *Wacker v. Bisson*, 5th Cir. 1965, 348 F.2d 602.

Also applicable is this statement of the rule as announced by the Fifth Circuit Court:

8

"[I]t is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass. " *American Fidelity & Casualty Co. v. Pennsylvania T. & F.M. Casualty Insurance Co*.,280 F.2d 453,461 (5th Cir. 1960).

In this case, Kokesh seeks declaratory judgment because sometime in the future "[he] intends to continue to violate the unconstitutional structures of La.R.S. 14:108(B)(1)(c)" (Complaint Doc 1, para 92) Such is not an actual controversary that falls within the Declaratory Judgment Act ambit of congressional power and dismissal pursuant to Rule 12(B)(1) is clearly appropriate.

### (3) Alternatively, Kokesh has No Cause of Action Against the Orleans Parish District Attorney's Office

Kokesh admits in his Complaint that his vehicle was stopped on the shoulder of I-10 (Complaint Doc. 1, para. 7)  Further , Kokesh admits that his passenger spray painted "water and a stencil to clean a portion of the dirty wall leaving behind the image of the word FREEDOM" (Complaint Doc 1 para. 11) which happens to be the name of his book "FREEDOM"(Complaint, Doc.1,para 5)

9

The Supreme Court has consistently recognized that police officers are allowed to ask a person for identification without implicating the Fourth Amendment. See *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185, 124 S.Ct. 2451, 2458, 159 L. Ed. 2d 292 (2004) (citing *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L. Ed. 2d 247 (1984) ("[I]nterrogation relating to one's identity or request for identification by police does not, by itself, constitute a Fourth Amendment seizure."). As set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed. 2d 889 (1968), a law enforcement officer who has a reasonable suspicion that an individual may be involved in criminal activity may briefly stop that individual and take steps to investigate further. See *Hiibel*, 542 U.S. at 185 (citing Delgado, 466 U.S. at 216).

As part of a *Terry* stop, police officers are within their right to demand identification as a routine matter. See *Hiibel*, 542 U.S. at 186. "The ability to briefly stop a suspect, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." Id. (quoting *U.S. v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L. Ed. 2d 604 (1985)). Numerous states, including Louisiana, have "stop and identify" statutes that require an individual to provide identification if a police officer has made a

10

lawful Terry stop. See *Hiibel*, 542 U.S. at 183 (citing La. Code Crim. Proc. art. 215.1(A)). Louisiana's "stop and identify" statute states:

A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and explanation of his actions.

La. Code of Crim. Proc. art. 215(A). "Inherent in the officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of his cooperation." *State v. Fauria*, 393 So.2d 688, 690 (La. 1981) (citing *White v. Morris*, 345 So.2d 461 (La. 1977). Law enforcement may demand identification as part of a lawful Terry stop.

In Louisiana, if a law enforcement officer is conducting a lawful Terry stop and has requested identification from a suspect which is reasonably related to the purpose of the stop, the suspect's refusal to provide the officer with his proper name is an arrestable offense pursuant to La. R.S. 14:108, which provides in pertinent part:

A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting

11

in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, or seizing property, or serving process is acting in his official capacity.

B. (1) The phrase 'obstruction of' as used herein, shall, in addition to its common meaning, signification, and connotation mean the following:

(c) Refusal by the arrested or detained party to give his name and make his name known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer. *State v. Harveston*, 2010-1402 (La. App. 4 Cir. 5/11/11), 71 So.3d 954, 958  (quoting La. R.S. 14:108).

 Pursuant to *La. Code Crim. Proc. art. 213,* an officer may, without a warrant, arrest a person who has committed an offense in his presence if the totality of the known circumstances indicates that it is "reasonably probable" that a crime has been committed. *Harveston*, 71 So.3d at 958 (citing *State v. Simms*, 571 So.2d 145, 149 (La. 1990). Citing also, *Jackson v. Hebert*,  LEXIS 117288 (U.S.Western District of Louisiana, 7/13/18)

It is clear law that La. R.S.14:108 has been adjudicated constitutional. Accordingly, Kokesh, has not stated a claim and dismissal under Rule 12(b)(6) is appropriate when the constitutionality of a statute has already been decided. See *Causeway Med. Suite v. Ieyoub,* LEXIS 13026 (U.S.E.D. LA 8/17/99) citing *Cleveland Surgi-Center, Inc. v. Jones*, 2 F.3d 686 (6th Cir.

1993). See also, *O'Hair v. Blumenthal*, 462 F. Supp. 19 (U.S. W.D. TX 4/17/78) citing *Aronow v. United States*, 432 F.2d 242 (9th Cir. 1970).

## <u>CONCLUSION</u>

Under the Eleventh Amendment "the judicial power of the United States should not be construed to extend to this suit against OPDA Office. dismissal pursuant to Rule 12(B)(1) is appropriate.

This suit does not set forth an actual controversary that falls within the Declaratory Judgment Act ambit of congressional power and dismissal pursuant to Rule 12(B)(1) is appropriate.

Alternatively, La. R.S.14:108 has been adjudicated constitutional. Accordingly, Kokesh, has not stated a claim and dismissal under Rule 12(b)(6) is appropriate.

Respectfully submitted,

/s/ THOMAS J. BARBERA
Thomas J. Barbera, 18719
LAW OFFICE OF THOMAS J.BARBERA
4645 Carthage Street
Metairie, Louisiana 70002
Telephone: (504) 931-0662
Barberalawfirm@cox.net

Counsel for Leon Cannizzaro,
in his official capacity as Orleans Parish District Attorney

13

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of March, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system, as well as by U.S. Mail for any non CM/ECF participant.

<u>/S/ THOMAS J. BARBERA</u>

14