| | |
|---|---|
| **ADAM KOKESH** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-1372** |
| **KEVIN CURLEE, ET AL** | **SECTION: "S" (4)** |

## ORDER AND REASONS

 **IT IS HEREBY ORDERED** that defendant Kevin Curlee's **Motion to Dismiss** (Rec. Doc. 24) is **DENIED**;

 **IT IS HEREBY ORDERED** that defendant Kevin Reeves's **Motions to Dismiss** (Rec. Docs. 24 and 25) are **GRANTED,** and the sole claim against him in his official capacity for prospective injunctive relief is **DISMISSED**.

## BACKGROUND FACTS

 The following facts are taken from plaintiff's complaint. On January 2, 2019, plaintiff Kokesh was one of two passengers in a motor vehicle operated by a third person and stopped on the shoulder of Interstate 10 in New Orleans. Louisiana State Police Sgt. Kevin Curlee stopped his vehicle behind the vehicle in which Kokesh had been riding and ordered Kokesh and the driver to get in their vehicle. Curlee then ordered the other passenger to remain outside and stand in front of Curlee's headlights. Curlee then handcuffed the other passenger and accused him of spray-painting the wall adjacent to the shoulder of the roadway. After examining the wall, Curlee acknowledged that the handcuffed passenger had not been spray-painting the wall as Curlee had initially thought, but instead had used water and a stencil to clean a portion of the dirty wall,

leaving behind an image of the word "FREEDOM!", the name of a book written by Kokesh.

After Curlee established for himself that no vandalism had taken place, the handcuffed passenger asked Curlee, "What's going to happen now?" Curlee responded that he would be letting everyone go. Curlee then retrieved his keys and began to uncuff the passenger. As Curlee did so, he noticed that Kokesh was video recording the encounter. At that point, Curlee's demeanor changed and he asked the handcuffed passenger, "You guys do this for attention? Filming cops for attention?" or words to that effect. Curlee then ordered the driver to get out of the vehicle and walked to the driver's door while Kokesh remained sitting in the front passenger seat, recording the encounter.

Curlee then demanded documents from Kokesh, saying, "You got your ID on you, bro? Let me see your ID. This is what y'all do? You videotape the police? Let me see your driver's license bro." Allegedly, Curlee did not ask Kokesh to state his name. Kokesh invoked his rights to counsel and to remain silent and told Curlee that he did not consent to a search of any kind. Curlee responded, "Let me see your driver's license, sir." Curlee then walked back to his vehicle and turned on bright spotlights pointed at Kokesh's camera. Thereafter, another Louisiana State Police trooper arrived and ordered Kokesh to get out of the vehicle, unplug his camera, and walk to the back of the vehicle. Curlee asked Kokesh again, "You got your ID on you?" Curlee then told Kokesh, "In just a minute you are going to be put in handcuffs and we're going to find out who you are or you can comply and do it the right way."

As Curlee began to handcuff Kokesh, Kokesh gave his camera to the driver. Curlee told the driver to turn off the camera. Curlee handcuffed Kokesh and told him that he was under

arrest. At some point thereafter, Curlee had the driver obtain Kokesh's driver's license from the vehicle and deliver it to Curlee. Curlee charged Kokesh with resisting an officer in violation of La. R.S. 14:108(B)(1)(c) and took him to the Harbor Police Substation. From there, Curlee and other officers transported Kokesh to the Orleans Parish jail. Kokesh alleges that before putting Kokesh in the police car for transport, Curlee dropped Kokesh face-down on to the floor, causing his head to hit the floor with great force, and causing intense pain, swelling and concussion-like symptoms. Kokesh remained in jail, allegedly without adequate medical treatment, until his release days later.

Subsequently, the charges initiated by Curlee against Kokesh were rejected by the Orleans Parish District Attorney. Kokesh filed suit against Louisiana State Police Sergeant Kevin Curlee, his supervisor, Kevin Reeves, in his official capacity as Louisiana State Police Superintendent, and Leon Cannizzaro, Jr., in his official capacity as Orleans Parish District Attorney, alleging, inter alia, that La. R.S.14:108(B)(1)(c) is unconstitutional and seeking to enjoin "any future enforcement of the statute, either against Kokesh or others."

The complaint alleges the following claims against Curlee in his individual capacity: state law claims for unlawful detention and false arrest and false imprisonment, kidnaping, battery, malicious prosecution and intentional infliction of emotional distress; § 1983 First Amendment retaliation; a § 1983 claim for Fourth Amendment "malicious prosecution;" and a § 1983 claim for unreasonable seizure, and excessive and unreasonable use of force.

The complaint alleges a cause of action against Reeves, Curlee's supervisor, in his official capacity, for prospective injunctive relief, seeking to enjoin him from seeking to enforce

the alleged unconstitutional statute in the future.

At oral argument on the motions, the parties stipulated to the dismissal of any claims against Curlee in his official capacity, any claims against Reeves for money damages, and any state law claims against Curlee. Defense counsel also acknowledged that, assuming the truth of the allegations of the complaint, plaintiff had stated a § 1983 claim against Curlee for excessive force. Accordingly, the remaining claims before the court in the instant motions are the § 1983 claims against Curlee (except for excessive force), and the claim for injunctive relief as to Reeves.

**I.  Motion to Dismiss Claims against Curlee**

Curlee has moved to dismiss the § 1983 claims against him for failure to state a claim, arguing that probable cause is a defense to all of them, and the allegations of plaintiff's complaint reflect that Curlee had probable cause for his actions**.**

    **A.    Legal Standards**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  "To survive a Rule 12(b)(6) motion to dismiss, 'enough facts to state a claim for relief that is plausible on its face' must be pleaded." <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quoting <u>Bell Atl. v. Twombly</u>, 550 U.S. 544 (2007).  A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>,

550 U.S. 544, 555 (citations omitted). The court "must accept all well-pleaded facts as true and

view them in the light most favorable to the non-moving party." <u>In re S. Scrap Material Co.,</u>

<u>LLC</u>, 541 F.3d 584, 587 (5th Cir. 2008).

### B.    Title 42 U.S.C. § 1983 Liability

Plaintiff's claims for money damages for First Amendment retaliation, Fourth

Amendment unreasonable seizure, Fourth Amendment excessive and unreasonable use of force,

and Fourth Amendment "malicious prosecution" are claims under 42 U.S.C. § 1983. That section

provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

States, and state officials acting in their official capacities, are not "persons" subject to

suit under 42 U.S.C. § 1983. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 66

(1989); <u>Burnette v. Brooks</u>, 250 F.3d 740 (5th Cir. 2001). Thus, the § 1983 claims, if alleged

against Curlee in his official capacity, would be barred because state officials acting in their

official capacity, are not "persons" subject to suit under 42 U.S.C. § 1983. See <u>Will</u>, <u>supra</u>.

However, plaintiff has sued Curlee in his individual capacity. Accordingly, his 1983 claims are

not barred on that basis.

**C.    Analysis**

*1. Unreasonable seizure*

When the police stop a vehicle and detain the occupants, they have effected a Fourth

Amendment "seizure," commonly referred to as a Terry stop. Johnson v. Thibodaux City, 887

F.3d 726, 733 (5th Cir. 2018)(citing United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004)

(en banc). In analyzing a Terry stop, courts first assess whether the initial stop was justified. Id.

Second, courts determine whether "the officer's subsequent actions were reasonably related in

scope to the circumstances that justified the stop." Id. The touchstone is reasonableness, which

"eschews bright-line rules [and] instead emphasiz[es] the fact-specific nature of the ... inquiry."

Id. quoting Brigham at 507 (quoting Ohio v. Robinette, 519 U.S. 33, 39,(1996)). "Hence, we

require that an officer's actions after a legitimate stop be 'reasonably related to the circumstances

that justified the stop, or to dispel[ ] his reasonable suspicion [that] developed during the stop.'

Id. A reasonable detention 'must be temporary and last no longer than is necessary to effectuate

the purpose of the stop, unless further reasonable suspicion, supported by articulable facts,

emerges.'" Id.

Officers may not continue a detention solely to obtain identification of passengers. See

Johnson, 887 F.3d at 734 (5th Cir. 2018) (citing  Brown v. Texas, 443 U.S. 47, 53 (1979)).

"Instead, they must have developed 'reasonable suspicion, supported by articulable facts' during

the justified portion of the stop or must have made the request because of 'the circumstances that

justified the stop.' "Johnson at  734 (quoting Brigham, 382 F.3d at 507).

Curlee contends that the allegations of the complaint reflect that he had probable cause

for the seizure of plaintiff, and thus that the unreasonable seizure claim is subject to dismissal.

Curlee argues that that accepting all of the pleadings as true, plaintiff made numerous allegations

that substantiate his probable cause. He notes:

> In Paragraph 7 of his Complaint, Mr. Kokesh alleges that he "was one of two passengers in a motor vehicle operated by a third person and stopped on the shoulder of Interstate 10 in New Orleans." As previously pointed out, stopping on the shoulder of a state highway, except in an emergency, is a violation of Louisiana law. *See* La. R.S. 32:296. Mr. Kokesh does not plead that he was stopped on Interstate 10 for an emergency. Plaintiff has thus pleaded probable cause for Officer Curlee to conduct an investigation and potentially to arrest him. Additionally, Plaintiff pleads in Paragraph 11 of his Complaint that he and/or his associates had used water and a stencil to clean a portion of the dirty wall, leaving behind an image of the word "Freedom!" Plaintiff has thus pleaded that Officer Curlee had probable cause to investigate and potentially arrest him for "criminal damage to property by defacing with graffiti," as codified in Louisiana Revised Statute 14:56.4. Finally, Mr. Kokesh pleads in Paragraphs 18, 21, 24 and 25 that Officer Curlee repeatedly asked him to identify himself by producing an ID or driver's license and that Mr. Kokesh refused to comply. Again, as previously pointed out, this is in violation of La. R.S. 14:108(A) and (B)(1)(c). Thus Mr. Kokesh has pleaded a third fact giving rise to probable cause. When focus is placed, as required by *Twombly*, on "all the allegations in the complaint," it is clear that Mr. Kokesh has pleaded probable cause and that he has not pleaded absence of probable cause.

Defendants' Reply Memo, Rec. Doc. 35, p. 4 (internal citations omitted).

However, while the above recitation is accurate, it overlooks a crucial fact: the complaint

alleges that whatever probable cause initially existed due to the detainees' violation of traffic

laws and presumed vandalism, after Curlee determined that the individuals he had detained were

not committing vandalism and released them, his initial justification for the stop ended, and all

the actions undertaken subsequently were without probable cause or justification. For example,

he alleges that "[e]ven when a police officer conducts a valid traffic stop, he must have

independent reasonable suspicion of criminal activity in order to prolong the traffic stop."

Cmplt., ¶ 42. And, "Curlee had no independent reasonable suspicion to prolong the traffic stop in this case beyond the point at which he told the other passenger that he was letting him, the driver, and Kokesh go." Cmplt., ¶ 43. Plaintiff specifically alleges a lack of probable cause at paragraphs 48-50 of the complaint. He alleges that his detention and subsequent events were motivated not by probable cause, but by Curlee's anger at being videotaped. Accordingly, it would appear that, while it may ultimately be determined that Curlee did have probable cause, plaintiff has in fact alleged a lack of probable cause, and thus at this juncture the unreasonable seizure claim is not subject to dismissal under Rule 12(b).

### 2. Malicious prosecution

The Fifth Circuit has explicitly held that "no such freestanding constitutional right to be free from malicious prosecution exists." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). Rather, it held that "malicious prosecution standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." The court explained:

> The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued. Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

352 F.3d at 953–54.

Curlee contends that plaintiff has failed to state a claim upon which relief can be granted for malicious prosecution, referencing the established principle that no freestanding

constitutional right to be free from malicious prosecution exists. Curlee also emphasizes that because the District Attorney refused the charges, plaintiff has not been prosecuted.

Nevertheless, plaintiff insists that his malicious prosecution claim is viable under Castellano, supra, because his malicious prosecution claim is not a freestanding claim, but rather a claim for malicious prosecution combined with the deprivation of federally-protected rights. However, as Castellano noted, "[s]uch claims of lost constitutional rights are for violation of rights locatable in constitutional text," and should be pursued as such, not confusingly labeled as malicious prosecution claims. Accordingly, the malicious prosecution claim should be dismissed. If there is a specific constitutional violation implied in that claim but not otherwise alleged, plaintiff may file a motion for leave to amend to add such claim.

### 3. First Amendment retaliation

The First Amendment prohibits government officials from taking retaliatory actions against individuals for engaging in protected speech. Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019). If an official takes adverse action against someone in retaliation for engaging in protected speech, and non-retaliatory grounds are insufficient to provoke the adverse consequences, the injured person may generally bring a First Amendment claim. Id. To prevail, a plaintiff must demonstrate a causal link between the government defendant's "retaliatory animus" and the plaintiff's subsequent injury. Id. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." Id. A "but-for" cause is required, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Id.

However, courts do not reach the causation analysis described above unless the plaintiff establishes an absence of probable cause. Id. at 1725.

Curlee argues that this claim, too, is subject to dismissal because probable cause existed for the underlying criminal charge, citing Nieves, 139 S. Ct. at 1725. In so arguing, he points to the same allegations from the complaint excerpted above in section C(1), which Curlee argues establish his probable cause to arrest plaintiff for violating traffic laws and resisting arrest. However, this argument has the same defect: in addition to the fact plaintiff explicitly alleges a lack of probable cause, plaintiff alleges that the violations complained of occurred after the original probable cause – a traffic violation for a non-emergency stop on the interstate, and potential vandalism – had expired. Plaintiff also alleges that the arrest was in retaliation for his use of a camera to record the events, and that the demeanor of the officer changed dramatically after Curlee noticed him filming. Accordingly, the 12(b)(6) motion to dismiss the First Amendment retaliation claim is denied.

## II.  Motion to Dismiss Claims against Reeves

Superintendent Reeves has also moved to dismiss the claims against him. In his opposition, Kokesh has clarified that he "seeks only injunctive relief against Reeves." Rec. Doc. 29, p. 2. Reeves seeks dismissal of the claim for injunctive relief arguing that the cause of action is not ripe for adjudication. Reeves also argues that he was not timely served and there was no good cause for this failure.

### A.    Standing

Article III of the Constitution restricts federal courts to deciding actual cases and

controversies. <u>Allen v. Wright</u>, 468 U.S. 737 (1984). It is a prerequisite for subject matter jurisdiction. <u>Cobb v. Central States</u>, 461 F.3d 632, 635 (5th Cir. 2006). As such, federal courts must raise the issue of constitutional standing <u>sua sponte</u>. <u>Ford v. NYLCare Health Plans of Gulf Coast, Inc.</u>, 301 F.3d 329, 332 (5th Cir. 2002).

To establish standing to sue for injunctive relief, "a party must: (1) have suffered an injury-in-fact; (2) establish a causal connection between the injury-in-fact and a complained-against defendant's conduct; (3) show that it is likely, not merely speculative, that a favorable decision will redress the injury-in-fact; and (4) demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." <u>Funeral Consumers All., Inc. v. Serv. Corp. Int'l</u>, 695 F.3d 330, 342 (5th Cir. 2012)(internal citations and quotations omitted). Even when a plaintiff has standing to sue for damages, he or she may lack standing to seek prospective injunctive relief. <u>Soc'y of Separationists, Inc. v. Herman</u>, 959 F.2d 1283, 1285 (5th Cir. 1992) (citations omitted).

In <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 (1983), the Supreme Court examined a situation in which the plaintiffs lacked standing to seek prospective injunctive relief even though they had standing to sue for damages. Lyons, a Los Angeles area resident, was subjected to a chokehold by city police officers during a traffic stop. He obtained a preliminary injunction prohibiting the police department from using the chokehold unless death or serious bodily injury were threatened. The Supreme Court reversed, explaining that " 'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' " 461 U.S. at 102 (quoting <u>O'Shea v.

Littleton, 414 U.S. 488 (1974)). Lyons lacked standing to obtain an injunction because it was entirely speculative that police officers would stop him again and choke him without provocation. Rather, "[t]o obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003).

In the instant case, Kokesh lacks standing for the requested prospective injunctive relief against Reeves for the same reason that Lyons did – it is entirely speculative that he will commit a crime, be detained or arrested, and La. R.S. 14:108 ("section 108") be invoked to ascertain his identity. While Kokesh alleges that he intends to violate section 108 in the future, "[s]uch 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–560 (1992)). Additionally, courts have found that the threat to the plaintiffs was not "sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses . . . ." Lyons, 461 U.S. at 103 (quoting O'Shea, 414 U.S. at 496). Rather, "it was to be assumed 'that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.'" Id. (quoting O'Shea, 414 U.S. at 497)).

In arguing that his claim for injunctive relief is justiciable, Kokesh relies on Seals v. McBee, 898 F.3d 587 (5th Cir. 2018). In Seals, the plaintiff was arrested for public intimidation

under La. R.S. 14:122, which criminalized "the use of violence, force, or threats" on any public officer with the intent to influence the officer's conduct. Seals threatened police when arrested, and brought a facial challenge to 14:122 as unconstitutionally broad, because the term "threat" potentially covered threats to take lawful actions, such as to sue a police officer. The Fifth Circuit affirmed the district court's invalidation of the statute as overbroad. In so ruling, the district court found standing present, because while plaintiffs admitted the district attorney had stated he did not intend to charge Seals at that time, that was "nothing more than a non-committal promise as protection" from future prosecution, which was available to the DA for four years after the arrest. 898 F.3d at 593. Thus, the district court found, and the Fifth Circuit agreed, that Seals did face a real threat of injury of being prosecuted under the challenged statute.

The present case is distinguishable in that regard. In Seals, the Fifth Circuit stated that "[w]hether the government disavows prosecution is a factor in finding a credible threat of prosecution . . . . is only one factor among many—for example, [the Supreme Court has] found standing because there was a history of enforcement, and the government would not disavow prosecution." Id. at 592 (citations omitted). The Seals court also noted that the Supreme Court had previously "found standing because, even though the plaintiffs had not yet violated the statute and the statute had never been applied, the government would not disavow prosecution if plaintiffs engaged in their intended course of action." Id. (citations omitted).

In the instant case, as conceded by counsel for Kokesh at oral argument, the attorney representing the New Orleans D.A.'s office in this case came before the court and stated on the

record that the D.A. would not be prosecuting Kokesh for the charge, which it had refused. This is not a non-committal promise, but a firm disavowal to prosecute on the charge, made on the record. Moreover, neither side has presented the court with evidence concerning the history of enforcement of the challenged statute. Accordingly, Kokesh has not established the requisite threat of a "real and immediate threat of repeated injury." Lyons, 461 U.S. at 102.

For an actual controversy to exist, Kokesh would have to find himself in a situation where he violated a law, was arrested by a state trooper, and the trooper invoked La. R. S. 14:108 to ascertain his identity. While this sequence of events is not impossible, it is too speculative to constitute the immediate threat of injury required for standing to pursue prospective injunctive relief.[1]

In addition, it is speculative whether the requested relief would actually redress the injuries alleged by Kokesh. Kokesh alleges he suffered numerous injuries including unlawful detention, false arrest, false imprisonment, kidnaping, battery, malicious prosecution, intentional infliction of emotional distress, and violations of his rights under the First and Fourth Amendments, as a result of Reeves' enforcement of the alleged unconstitutional statute. He further alleges that no probable cause existed for the extension of the stop that led to his injuries.

However, by its terms section 108 applies only to instances where a **lawful** arrest or detention is being made. See La. R.S. 14:108(A)(emphasis added). It has been consistently

---

[1] The court notes that while Kokesh's complaint also seeks to enjoin Reeves from future enforcement of the statute as to unknown and unnamed other persons as well (Cmplt, ¶ 95), plaintiff has alleged no facts that address the requirements for prospective injunctive relief with respect to these persons that would establish standing to seek injunctive relief for unknown third parties.

interpreted by both federal and Louisiana state courts in a narrow fashion, to only "prohibit conduct that obstructs or interferes with an officer, acting in his official capacity, who is attempting to seize property, serve process, or make a **lawful** arrest [or detention]."[2] World Wide St. Preachers' Fellowship v. Town of Columbia, Louisiana, 2005 WL 8162284, at *9 (W.D. La. May 5, 2005) (citing State v. Joseph, 759 So.2d 136, 140 (La. App. 5 Cir. 2000); Adams v. Thompson, 557 F. Supp. 405, 410 (M.D. La. 1983) (emphasis supplied). However, Kokesh alleges that his detention was unlawful, because Curlee lacked probable cause. Thus, arguably, his injuries stem not from the application of section 108, but from the alleged lack of probable cause for the detention. Even if Reeves was enjoined from future enforcement of section 108 against Kokesh, it is speculative whether that would redress injuries caused by an unlawful detention. See, Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotations omitted)).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant Kevin Curlee's **Motion to Dismiss** the § 1983 claims against him (Rec. Doc. 24) is **DENIED**;

**IT IS HEREBY ORDERED** that defendant Kevin Reeves's **Motions to Dismiss** (Rec.

---

[2] In 2006, the statute was amended to include lawful detention as a fourth activity covered by the statute, so that at present, resisting an officer includes opposition, obstruction, etc. to an officer acting in his official capacity to seize property, serve process, or make a lawful detention or arrest. See 2006 La. Sess. Law Serv. Act 132 (H.B. 26).

Docs. 24 and 25) are **GRANTED,** and the sole claim against him in his official capacity for prospective injunctive relief is **DISMISSED**.

New Orleans, Louisiana, this __24th__ day of October, 2019.

**MARY ANN VIAL LEMMON**