## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ADAM KOKESH**                                                    **CIVIL ACTION**

**VERSUS**                                                          **NO:  19-1372**

**KEVIN CURLEE, ET AL**                                   **SECTION: "S" (4)**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendant Kevin Curlee's **Motion for Summary Judgment** (Rec. Doc. 42) is **GRANTED in part,** and plaintiff Adam Kokesh's § 1983 claim for excessive force is dismissed with prejudice;

**IT IS FURTHER ORDERED** that defendant Kevin Curlee's **Motion for Summary Judgment** is **DENIED in part**, and summary judgment seeking dismissal of plaintiff's § 1983 claims for unreasonable seizure and First Amendment retaliation, and a finding that Curlee is entitled to qualified immunity, is denied.

### BACKGROUND

On the night of January 2, 2019, plaintiff, Adam Kokesh, was a passenger in a vehicle stopped and parked on the shoulder of the Carrollton overpass on Interstate 10 in New Orleans, Louisiana. Trooper Kevin Curlee pulled up behind the stopped vehicle to investigate the apparent violation of La. R. S. 32:296(A), which provides: "No person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder, unless such stopping, parking, or standing is made necessary by an emergency. . . ." After Curlee approached, he observed that two of the vehicle's occupants had been pressure-washing a stencil of the word "Freedom" on the

side wall of the highway. Initially Curlee believed the car's occupants were spray-painting the wall, but approximately three minutes into the investigation Curlee determined that they were actually pressure washing the wall, which was not illegal. He stated to the individual he was questioning that "if y'all are not spray painting that'll be fine."

Nevertheless, the detention continued while Trooper Curlee attempted to have Kokesh, who at that point was seated in the vehicle, identify himself. Telling Kokesh that "[t]he reason we are out here is because y'all are illegally stopped on the shoulder of the road," Curlee repeatedly requested that Kokesh identify himself and produce his driver's license, even though he established Kokesh's identity through his companions and had run a computer identity check on him. In response to Kokesh's pointing out to him that he was not operating the vehicle, Curlee responded, "No, but you were a passenger in it so that means you're in that car. So when a valid traffic stop occurs, we in Louisiana have the right to identify every person in the car. You understand that?"

According to the State Police Misdemeanor Arrest Narrative completed by Curlee, he arrested Kokesh because of his "continued uncooperative behavior." Kokesh was charged with resisting an officer in violation of Louisiana Revised Statute 14:108.[1,2]

---

[1] That statute provides in pertinent part:

A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

Kokesh was transported to the Harbor Police station for processing before being moved to Central Lockup in New Orleans. While at the Harbor Police station, he refused to cooperate with his transport to Central Lockup, and thus Curlee and another officer, Sergeant Chamorro, were forced physically to carry him from a chair in the Harbor Police station to a waiting car. Videotape of the transfer shows that to accomplish this, Chamorro hooked his arm under Kokesh's right arm, with Curlee taking Kokesh's left arm, and they essentially dragged him to the car. On the video of the transfer, Kokesh's head and torso are about a foot off the floor, with his lower trunk and legs dragging behind him on the floor.

During the transfer, as they approach the door, Sergeant Chamorro's grip slipped allowing Kokesh's right side to drop to the mat on the floor. It appears that Kokesh fell about a foot, falling first on to his right shoulder and then on to the right side of his face. He subsequently was placed in the vehicle for transfer, and close-up video shots of his face at that point do not show any redness or other marks or signs of trauma.

On January 5, 2019, after his release from Central Lockup in Orleans Parish, Kokesh filed an in-person report for false arrest and excessive force with Internal Affairs, which was taken by Officer Chad Guidry. The videotape of Kokesh's filing of the complaint was also

---

B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
. . . .

    (c) Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

[2] The charge was subsequently refused by the District Attorney's office.

submitted in connection with the motion for summary judgment. In the video, Kokesh recounts

being dropped on to the rubber mat, and claims he "caught the blow" on his left eyebrow, which

he pointed to on the videotape. He also stated that Officer Curlee was holding his left side, and

said that "I know that he [Curlee] was the one who dropped me." However, the videotape of the

transport incident shows that it was Sergeant Chamorro, who was holding Kokesh's right side,

whose grip slipped, and that the contact with Kokesh's face and the floor mat was to his right

side.

Kokesh filed suit seeking monetary, injunctive, and declaratory relief based on state and

federal law, stemming from this incident. The claims for injunctive and declaratory relief and all

official capacity claims against all defendants were previously dismissed by this court's order.

Rec. Doc. 37. A subsequent order of the court dismissed plaintiff's state law claims and

plaintiff's claim for malicious prosecution under 42 U.S.C. § 1983. Rec. Doc. 37. Thus,

plaintiff's only remaining claims are his 42 U.S.C. § 1983 claims for monetary relief against

Trooper Curlee in his individual capacity for unreasonable seizure under the Fourth Amendment

to the United States Constitution, First Amendment retaliation, and excessive and unreasonable

use of force. Curlee has moved for summary judgment on all claims, contending that they all

depend on a finding of no probable cause, and probable cause existed for both the traffic stop

and Kokesh's arrest. Curlee further argues that he is entitled to qualified immunity from suit,

because he did not violate the plaintiff's clearly established constitutional rights.

## DISCUSSION

### *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v.

5

Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

***Unreasonable seizure***

     When the police stop a vehicle and detain the occupants, they have effected a Fourth

Amendment "seizure," commonly referred to as a Terry stop. Johnson v. Thibodaux City, 887

F.3d 726, 733 (5th Cir. 2018)(citing United States v. Brigham, 382 F.3d 500, 506 (5th Cir.

2004)) (en banc). In analyzing a Terry stop, courts first assess whether the initial stop was

justified. Id. Second, courts determine whether "the officer's subsequent actions were reasonably

related in scope to the circumstances that justified the stop." Id. The touchstone is

reasonableness, which "eschews bright-line rules [and] instead emphasiz[es] the fact-specific

nature of the ... inquiry." Id. quoting Brigham at 507 (quoting Ohio v. Robinette, 519 U.S. 33,

39, 117 S. Ct. 417, 136 L. Ed.2d 347 (1996)). "Hence, we require that an officer's actions after a

legitimate stop be 'reasonably related to the circumstances that justified the stop, or to dispel[ ]

his reasonable suspicion [that] developed during the stop.' Id. A reasonable detention 'must be

temporary and last no longer than is necessary to effectuate the purpose of the stop, unless

further reasonable suspicion, supported by articulable facts, emerges.' " Id.

     Officers may not continue a detention solely to obtain identification of passengers. See

Johnson, 887 F.3d at 734 (5th Cir. 2018) (citing Brown v. Texas, 443 U.S. 47, 53 (1979)). And,

"[w]hile officers are free to demand identification in the circumstances of a lawful stop or arrest,

they 'may not arrest a suspect for failure to identify himself if the request for identification is not

reasonably related to the circumstances justifying the stop.'" Id. at 733 (quoting Hiibel v. Sixth

Judicial Dist. Court, 542 U.S. 177, 188–89 (2004). In Johnson, the arresting officer operated on

6

the belief that the passengers in a stopped vehicle " were not free to leave '[u]ntil they [were]

identified.' He testified that, because 'they were inside of a vehicle on a traffic stop,' 'they needed

to be ID'd.'" Id. However, the Fifth Circuit disagreed, finding that the police were not permitted

to continue Johnson's detention solely to obtain identification. Id. (citing Brown, 443 U.S. at 53,

99 S.Ct. 2637. Instead, they must have developed "reasonable suspicion, supported by

articulable facts" during the justified portion of the stop or must have made the request because

of "the circumstances that justified the stop." Id. (quoting Brigham, 382 F.3d at 507).

    In the present case, Trooper Curlee encountered a vehicle stopped on the I-10 overpass at

Carrollton Avenue on the night of January 2, 2019, which he reasonably believed to be in

violation of La. R. S. 32:296. Under those circumstances, he was justified in stopping to

investigate the vehicle. Thus, the initial stop and detention were valid. Curlee contends that the

continued detention and arrest were justified because Kokesh was arrested after he refused to

cooperate with the investigation.

    Kokesh argues that the continued detention was unreasonable, because very shortly into

the stop, Officer Curlee established that no illegal activity was afoot, and at that point, the

justification for the detention terminated, and he and his companions should have been released.

The video evidence submitted in connection with the motion for summary judgment is consistent

with this argument. It reflects that prior to Curlee's demanding identification from Kokesh,

Curlee was aware that the vehicle was stopped on the shoulder but not broken down, and that a

passenger had used water and a stencil but not paint. In fact, Curlee stated at one point, "if y'all

are not spray painting that'll be fine," and,  "I see that it's not paint which, I guess, there's no law

7

against cleaning something."

Accordingly, the court finds that Kokesh has identified a fact issue regarding whether Curlee had reasonable suspicion supported by articulable facts that Kokesh had engaged in criminal activity or was about to do so, and whether Curlee's demand that Kokesh provide documentary identification was reasonably related in scope to the reason for the traffic stop. Because a fact issue exists as to whether there was probable cause for the existence of the detention and arrest, Trooper Curlee is not entitled to summary judgment on the unreasonable seizure claim.

### First Amendment retaliation claim

Curlee has also moved for summary judgment on plaintiff's First Amendment retaliation claim. The First Amendment prohibits government officials from taking retaliatory actions against individuals for engaging in protected speech. Nieves v. Bartlett, —— U.S. ——, 139 S. Ct. 1715, 1722 (2019). If an official takes adverse action against someone in retaliation for engaging in protected speech, and non-retaliatory grounds are insufficient to provoke the adverse consequences, the injured person may generally bring a First Amendment claim. Id. To prevail, a plaintiff must demonstrate a causal link between the government defendant's "retaliatory animus" and the plaintiff's subsequent injury. Id. However, courts do not reach the causation analysis unless the plaintiff establishes an absence of probable cause. Id. at 1725.

In this case, Curlee argues that because he acted with probable cause in detaining and arresting Kokesh, he is entitled to summary judgment on the First Amendment retaliation claim. 2017) (internal quotation omitted). However, as discussed above, the court finds that fact issues

exist precluding a finding that probable cause existed for Kokesh's arrest for resisting an officer by failing to provide identification. Moreover, in cases in which motive or subjective intent of a party is dispositive, summary judgment is generally inappropriate. Irwin v. U.S., 558 F.2d 249, 252 (5th Cir.1977); see also, 10A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2727.2 (4th ed. 2016) (citing Alabama Great S. R. Co. v. Louisville & N.R. Co., 224 F.2d 1, 5 (5th Cir. 1955)). Accordingly, summary judgment on the First Amendment retaliation claim is denied.

***Excessive Force***

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. Milligan v. City of Slidell, 226 F.3d 652, 654 (5th Cir. 2000). To succeed in a § 1983 claim for excessive force under the Fourth Amendment, a plaintiff must show that: (1) he suffered an injury; (2) such injury resulted directly and only from the use of force that was excessive to the need, and; (3) such force was objectively unreasonable. Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004); Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000). Assessing the reasonableness of a police officer's use of force involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989)(internal quotations omitted). In excessive force cases, the objective reasonableness inquiry "amounts to 'whether the totality of the circumstances justifies a particular sort of seizure.' " Autin v. City of Baytown, Tex., 174 Fed. Appx. 183, 185 (5th Cir. 2005) (quoting Tennessee v. Garner, 147 U.S.

9

1, 8-9 (1985)).

An "excessive force claim is separate and distinct from [an] unlawful arrest claim, and [courts] must therefore analyze the excessive force claim without regard to whether the arrest itself was justified. Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007)(citing Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1332 (11th Cir. 2006) ("When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest.")(other citations omitted)).

In his complaint, Kokesh alleges that "[b]efore putting Kokesh in a squad car for transport to jail, Curlee and the others dropped Kokesh face-first onto the floor, causing Kokesh's head to hit the floor with great force, and causing Kokesh intense pain, facial swelling, and concussion-like symptoms including dizziness and disorientation." Cmplt., ¶ 32.

In moving for summary judgment, Curlee has submitted the videotape of the complained of transfer. It does not reflect that Kokesh was dropped face-first on to the floor, or that his head hit the floor with great force. Rather, Kokesh's right side slipped from Sergeant Chamorro's grip, and Kokesh fell a rather small distance on to a padded mat, first on to his right shoulder, and then to the right side of his face. None of the subsequent videotape, which at points shows close up images of both sides of Kokesh's face, reveals any marks or other signs of trauma.

Also submitted in connection with the motion is the videotape of Kokesh's filing of an excessive force complaint with Officer Chad Guidry on January 5, 2019. In the video, Kokesh recounts being dropped by Curlee and points to an injury over his left eyebrow. However, the

videotape of the transfer from the station to the car clearly shows that it was Sergeant Chamorro, who was holding Kokesh's right side, whose grip slipped, and that the contact with Kokesh's face and the floor mat was to his right side.

The court's review of the videotape suggests that the force used was necessary because Kokesh, despite repeated requests to walk to the car, refused to do so. The force used was not calculated to inflict harm, but simply to move Kokesh from one location to another. Further, there is no indication of any injury resulting from the incident, and the injury to Kokesh's left eyebrow is inconsistent with what is documented on the videotape.

Considering this evidence, the burden shifts to Kokesh to produce evidence of a genuine issue for trial, which cannot be satisfied with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little, 37 F.3d at 1075.

In response, Kokesh contends that the court is being asked to draw an inference in the movant's favor based upon an equivocal video tape and in the face of Kokesh's sworn declaration that "[b]efore putting me in a squad car for transport to jail, Curlee and the others intentionally dropped me face-first onto the floor, causing my head to hit the floor with great force, and causing me intense pain, facial swelling, dizziness, and disorientation." Kokesh Decl, Rec. Doc. 54-2 at ¶ 36.

While it is true that at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party if there is a **genuine** dispute as to those facts, the Supreme Court has emphasized, " '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Scott v. Harris,

550 U.S. 372, 380 (2007)(quoting <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–587(1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id.</u>

Such is the case here. Kokesh's excessive force claim is predicated on being dropped by Curlee on his left side, as evidenced by an injury to his left eyebrow. The videotape of his transfer reflects that he was dropped by Chamorro on his right side. On the evidence presented, the court finds that Curlee is entitled to summary judgment on the excessive force claim.

Finally, with respect to Kokesh's argument that the use of any amount of force used against him was excessive because no probable cause existed for his arrest, "[t]his argument improperly conflates [plaintiff's] 'separate and distinct' false arrest claim with his excessive force claim." <u>Johnson v. Hollins</u>, 716 F. App'x 248, 254, n. 9 (5th Cir. 2017) (citing <u>Freeman</u>, 483 F.3d at 417. Accordingly, summary judgment is appropriate.

### *Qualified Immunity*

"Qualified immunity protects government officials performing discretionary functions from individual liability for civil damages, but only 'insofar as their conduct does not violate clearly established ... rights of which a reasonable person would have known.' " <u>Morgan v. Swanson</u>, 659 F.3d 359, 400 (5th Cir. 2011)(<u>en banc</u>)(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). "In suits alleging illegal arrest, the qualified immunity determination turns on whether 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the ... officer [ ] possessed.'" <u>Babb v. Dorman</u>, 33 F.3d 472,

12

477 (5th Cir.1994)(quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." <u>Id.</u> "Thus, a qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause." <u>Id.</u>

Curlee argues that he is entitled to qualified immunity because Kokesh has failed to present competent evidence of a constitutional violation. However, the right to be free from unreasonable seizure is a clearly established constitutional right. <u>Club Retro, L.L.C. v. Hilton</u>, 568 F.3d 181, 206 (5th Cir. 2009) (citations omitted). As discussed above, genuine issues of material fact are present that bear on the determination of whether a reasonable officer could have believed that Kokesh's arrest was lawful. Therefore, Curlee's motion for summary judgment regarding his entitlement to qualified immunity is denied.

## CONCLUSION

**IT IS HEREBY ORDERED** that defendant Kevin Curlee's **Motion for Summary Judgment** (Rec. Doc. 42) is **GRANTED in part,** and plaintiff Adam Kokesh's § 1983 claim for excessive force is dismissed with prejudice;

**IT IS FURTHER ORDERED** that defendant Kevin Curlee's **Motion for Summary Judgment** is **DENIED in part**, and summary judgment seeking dismissal of plaintiff's § 1983

claims for unreasonable seizure and First Amendment retaliation, and a finding that Curlee is entitled to qualified immunity, is denied.

New Orleans, Louisiana, this __7th__ day of May, 2020.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

14